## LAW OFFICES OF STEVEN BALLARD
### 33 Bradford Street, Concord MA 01742
*Tele 978-254-1060 Email sballard@stevenballard.com*

May 2, 2023

Maria R. Hamilton, Clerk of the Court
U.S. Court of Appeals for the First Circuit
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 2500
Boston, MA 02210

Re:  <u>Doe et al v. Holly et al</u>, No. 22-1232 (1st Cir.) Oral argument held on May 1, 2023, before Judges Barron, Howard, and Montecalvo

Dear Ms. Hamilton:

Plaintiffs/Appellants (Appellants) submit this letter under Rule 28(j) to address *Barron v. Kolenda*, 401 Mass. 408 (March 7, 2023). Here the Massachusetts Supreme Judicial Court (SJC) interpreted "threats, itimidation or coercion" in the Massachusetts Civil Rights Act, M.G.L. c. 12 §§11H - 11I (MCRA). Plaintiff Barron criticized the Southborough Select Board during public comment in a public meeting, calling board member Defendant Kolenda "a Hitler." Kolenda then halted the meeting and threatened Barron with removal. In its *de novo* review, the SJC unanimously found Kolenda's conduct to constitute "threats, intimidation, or coercion." The SJC thus does not interpret "threats, intimidation, or coercion" in the manner Appellees have argued. The more egregious coercion of Doe Child, through denial of a safe classroom and demand she return to a classroom of her bullying aggressors (students and teacher), leading to constructive deprivation of education and *de facto* expulsion from the school district, should easily meet a test under this sensible interpretation of the MCRA. *Barron v. Kolenda* shows how the MCRA works together with other state statutory and constitutional rights involving municipal actors; it instructs how our judge should have approached Appellants' state law claims.

Appellants further address the predominant issue at oral argument - the timeliness of the notice of appeal. Notice must be filed "within 30 days after entry of the judgment or order appealed from." FRAP Rule 4(1)(A). Attached are the relevant ECF notices, sent and received on February 28, 2023 (none were sent on February 25), and today's Docket Activity Report. These notices and report show precise dates and times of entry.

Respectfully submitted,

/s/ Steven R. Ballard
Steven R. Ballard

cc: Defendants/Appellees (via CM/ECF)

NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-13284

LOUISE BARRON & others[1]  vs.  DANIEL L. KOLENDA[2] & another.[3]

Worcester.    November 2, 2022. - March 7, 2023.

Present:  Budd, C.J., Gaziano, Lowy, Cypher, Kafker, & Wendlandt, JJ.

Open Meeting Law.  Municipal Corporations, Open meetings, Selectmen, Governmental immunity.  Constitutional Law, Right to assemble, Right to petition government, Freedom of speech and press.  Governmental Immunity.  Massachusetts Civil Rights Act.  Civil Rights, Availability of remedy, Immunity of public official.  Declaratory Relief.

Civil action commenced in the Superior Court Department on April 3, 2020.

The case was heard by Shannon Frison, J., on a motion for judgment on the pleadings.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

Ginny Sinkel Kremer for the plaintiffs.
John J. Davis for the defendants.

_____

[1] Jack Barron and Arthur St. Andre.

[2] Individually and as a member of the board of selectmen of Southborough.

[3] Town of Southborough.

The following submitted briefs for amici curiae:

John Foskett for Massachusetts Association of School Committees.

Ruth A. Bourquin for American Civil Liberties Union of Massachusetts, Inc.

Maura E. O'Keefe, Town Counsel, & Rosemary Crowley for Massachusetts Municipal Lawyers Association.

Frank J. Bailey, Selena Fitanides, & John C. La Liberte for PioneerLegal, LLC.

KAFKER, J.  After objecting to open meeting law violations and other municipal actions in a public comment session at a meeting of the board of selectmen of Southborough (board), the plaintiff Louise Barron was accused of violating the board's "public participation at public meetings" policy (public comment policy or civility code) and eventually threatened with physical removal from the meeting.  Thereafter, she and two other plaintiffs brought State constitutional challenges to the policy, claiming in particular that she had exercised her constitutionally protected right under art. 19 of the Massachusetts Declaration of Rights "to assemble, speak in a peaceable manner, and petition her town leaders for redress."

In the plaintiffs' request for declaratory relief, seeking to have the public comment policy declared unconstitutional, they also used terminology associated with free speech claims brought under art. 16 of the Massachusetts Declaration of Rights, as amended by art. 77 of the Amendments to the Constitution, and the First Amendment to the United States Constitution, although they voluntarily withdrew their First

Amendment and other Federal claims, eliminating the Federal constitutional basis that had justified removal of the case from State to Federal court.  Finally, Barron claims that the threat to remove her from the meeting for exercising her State constitutional rights violated the Massachusetts Civil Rights Act (MCRA), G. L. c. 12, §§ 11H-11I.

For the reasons set forth _infra_, we conclude that the public comment policy of the town of Southborough (town) violates rights protected by art. 19 and, to the extent it is argued, art. 16.  Under both arts. 19 and 16, such civility restraints on the content of speech at a public comment session in a public meeting are forbidden.  Although civility, of course, is to be encouraged, it cannot be required regarding the content of what may be said in a public comment session of a governmental meeting without violating both provisions of the Massachusetts Declaration of Rights, which provide for a robust protection of public criticism of governmental action and officials.  What can be required is that the public comment session be conducted in an "orderly and peaceable" manner, including designating when public comment shall be allowed in the governmental meeting, the time limits for each person speaking, and rules preventing speakers from disrupting others, and removing those speakers if they do.  We have concluded that such time, place, and manner restrictions do not violate either

the right to assembly under art. 19 or the right to free speech under art. 16.  See Desrosiers v. Governor, 486 Mass. 369, 390-391 (2020), cert. denied, 142 S. Ct. 83 (2021) (permitting time, place, and manner restrictions under art. 19); Mendoza v. Licensing Bd. of Fall River, 444 Mass. 188, 197-198 (2005) (discussing time, place, and manner restrictions under art. 16).

Furthermore, when Barron alleged that the chair threatened to have her physically removed from a public comment session of a public meeting after she criticized town officials about undisputed violations of the open meeting laws, she properly alleged that he threatened to interfere with her exercise of State constitutional rights protected by arts. 16 and 19 in violation of the MCRA.  There is also no qualified immunity, as there is a clearly established State constitutional right under arts. 16 and 19 to object (and even to do so vigorously) to the violation of the law by government officials in a public comment session of a public meeting.  We therefore reverse the Superior Court judgment entered in favor of board member Daniel L. Kolenda.  We also direct the Superior Court to enter a judgment declaring the town's public comment policy unconstitutional in violation of arts. 19 and 16.[4]

---

[4] We acknowledge the amicus briefs submitted by the Massachusetts Association of School Committees; American Civil Liberties Union of Massachusetts, Inc.; Massachusetts Municipal Lawyers Association; and PioneerLegal, LLC.

Background.  1.  Public meeting.  We draw the facts from
the plaintiffs' complaint, while also considering the board's
public comment policy and the video recording of the board's
December 4, 2018 meeting, both of which were included in the
record and considered by the judge below.  See Mullins v.
Corcoran, 488 Mass. 275, 281 (2021), quoting Schaer v. Brandeis
Univ., 432 Mass. 474, 477 (2000) ("In deciding [a motion for
judgment on the pleadings], all facts pleaded by the nonmoving
party must be accepted as true. . . .  We also may rely on
'matters of public record, orders, items appearing in the record
of the case, and exhibits attached to the complaint'");
Rosenberg v. JPMorgan Chase & Co., 487 Mass. 403, 408 (2021) (in
reviewing motion to dismiss, we may consider extrinsic documents
plaintiff relied on in framing complaint).

Barron is a town resident and a longtime participant in
local government.  The board consists of five elected members.
Kolenda was a longtime member of the board.  The board is
subject to "the Massachusetts open meeting law, G. L. c. 30A,
§§ 18 and 20 (a), which generally requires public bodies to make
their meetings, including 'deliberations,' open to the public."
Boelter v. Selectmen of Wayland, 479 Mass. 233, 234 (2018).  The
board's public comment policy outlines the public comment
portion of its meetings where town residents may address the

board.[5]  In 2018, the Attorney General determined that the board

had committed dozens of open meeting law violations and ordered

--------

[5] The public comment policy states in full:

"The [board of selectmen] recognizes the importance of
active public participation at all public meetings, at the
discretion of the [c]hair, on items on the official agenda
as well as items not on the official agenda.  All comments
from the public should be directed to or through the
[c]hair once the speaker is recognized, and all parties
(including members of the presiding [b]oard) act in a
professional and courteous manner when either addressing
the [b]oard, or in responding to the public.  Once
recognized by the [c]hair, all persons addressing the
[b]oard shall state their name and address prior to
speaking.  It is the role of the [c]hair to set time
limitations and maintain order during public meetings, as
it is important that the [b]oard allow themselves enough
time to conduct their official town business.

"If included on the meeting agenda by the [c]hair,
'[p]ublic [c]omment' is a time when town residents can
bring matters before the [b]oard that are not on the
official agenda.  Comments should be short and to the
point, with the [c]hair ultimately responsible to control
the time available to individual speakers.  Except in
unusual circumstances, any matter presented under '[p]ublic
[c]omment' will not be debated or acted upon by the [b]oard
at the time it is presented.

"All remarks and dialogue in public meetings must be
respectful and courteous, free of rude, personal or
slanderous remarks.  Inappropriate language and/or shouting
will not be tolerated.  Furthermore, no person may offer
comment without permission of the [c]hair, and all persons
shall, at the request of the [c]hair, be silent.  No person
shall disrupt the proceedings of a meeting.

"Finally, while it true that State law provides that the
[c]hair may order a disruptive person to withdraw from a
meeting (and, if the person does not withdraw, the [c]hair
may authorize a constable or other officer to remove the
person from the meeting), it is the position of the [board]
that no meeting should ever come to that point."

each member of the board to attend in-person open meeting law training.

Barron attended the board's meeting on December 4, 2018, where Kolenda was acting as the chair. The board members discussed a number of topics, including the town budget, which, if approved, would result in increased real estate taxes for town residents. The board also discussed the possibility of elevating the town administrator to the position of town manager. The board also briefly addressed the open meeting law violations. During the discussion on this point, Kolenda stated that the board is "a group of volunteers," and further characterized its members as "public servants" who "do their best."

After approximately two and one-half hours of business, Kolenda announced that the board would be moving to public comment. Kolenda then stated, paraphrasing from the public comment policy:

> "And before we go to public comment, just a reminder for anyone who wants to make public comment. It's a time when town residents can bring matters before the board of selectmen that are not on the official agenda. We do have these posted for all boards and committees. Comments should be short and to the point and remarks must be respectful and courteous, free of rude, personal, or slanderous remarks, and the guidelines go on for a couple of pages, but if anyone has any questions on that feel free to ask us. If not, public comment please."

Barron then approached the podium holding a sign that stated "Stop Spending" on one side and "Stop Breaking Open Meeting Law"

on the other.  Barron began her comments by critiquing the
proposed budget increases, opining that the town "ha[d] been
spending like drunken sailors" and was "in trouble."  She argued
for a moratorium on hiring and inquired about the benefits of
hiring a town manager as opposed to a town administrator.
Kolenda responded that questions would not be answered as the
board was "not going to have a back and forth discussion during
public comment."  Barron began moving to her next topic of
concern but another board member responded to her question,
indicating that the issue of a town manager would be considered
by a committee and "ha[d] nothing to do with [the] upcoming town
meeting."

After the board member's response, Barron began to critique
the board for its open meeting law violations.  Barron and
Kolenda then had the following exchange:

> Barron:  "And the next thing I want to say is you said that
> you were just merely volunteers, and I appreciate that, but
> you've still broken the law with open meeting law, and that
> is not the best you can do.  And . . . when you say that
> . . . this is the best we could do, I know it's not easy to
> be volunteers in town but breaking the law is breaking the
> law and --"

> Kolenda:  "So ma'am if you want to slander town officials
> who are doing their very best --"

> Barron:  "I'm not slandering."

> Kolenda:  "-- then then we're gonna go ahead and stop the
> public comment session now and go into recess."

When Kolenda said the word "now," Barron interjected and, simultaneously to Kolenda saying, "go into recess," Barron stated, "Look, you need to stop being a Hitler." Barron continued: "You're a Hitler. I can say what I want." After Barron's second reference to Hitler, Kolenda said: "Alright, we are moving into recess. Thank you."

The audio recording on the public broadcast then stopped. A message on the screen stated, "The Board of Selectmen is taking a brief recess and will return shortly," but the video recording continued to show the board members for approximately thirteen seconds.

Kolenda turned off his microphone, stood up, and began pointing in Barron's direction, repeatedly yelling at her, "You're disgusting!" Kolenda told Barron that he would have her "escorted out" of the meeting if she did not leave. Concerned that Kolenda would follow through with his threat, Barron left the meeting.

2. Procedural history. In April 2020, Barron, her husband, and a third resident of the town filed a complaint in the Superior Court alleging both Federal and State causes of action relating to the board's December 4, 2018 meeting. The defendants removed the case to Federal court, but it was remanded to the Superior Court after the plaintiffs withdrew the Federal claims. The plaintiffs' amended complaint sought a

judgment declaring that a portion of the policy was
unconstitutional under the Massachusetts Declaration of Rights
to the extent that the policy disallows criticism of the board
members and their decisions.  They also sought relief against
Kolenda in his individual capacity under the MCRA, G. L. c. 12,
§§ 11H-11I, for violation of art. 19.[6]  Article 19 is the only
provision of the Declaration of Rights that is expressly
referenced in the complaint, although the request for
declaratory relief is more open-ended and uses the terminology
associated with free speech claims.

Prior to discovery, the defendants filed a motion for
judgment on the pleadings.  The motion was allowed as to all
counts, and the plaintiffs appealed.  We transferred the case
here on our own motion.

Discussion.  In the instant case, we are confronted with a
State, not a Federal, constitutional challenge.  It is also a

---

[6] The plaintiffs also brought an MCRA claim against Kolenda
in his official capacity; MCRA claims against two other board
members in their official and individual capacities; and claims
against the board members for violating the open meeting law.
Barron individually brought several common-law claims against
Kolenda.  The judge dismissed all of Barron's and the
plaintiffs' claims.  On appeal, the plaintiffs challenge only
the dismissals of their claim for a declaratory judgment and the
MCRA claim against Kolenda.  The plaintiffs do not argue against
the dismissal of the MCRA claim against Kolenda in his official
capacity.  Consequently, we do not review the dismissal of the
other claims.  See Lyons v. Secretary of the Commonwealth, 490
Mass. 560, 593 n.42 (2022) (claims not argued in brief are
waived).

challenge expressly premised on art. 19, a provision that has not been the focus of much attention in recent case law, despite its illustrious past. Notably, this provision has served an important, independent purpose for much of the history of Massachusetts government, as there was no free speech provision in the original Declaration of Rights. In fact, such a provision was not added to the Massachusetts Constitution until 1948, when it was amended to include express free speech protections. See art. 16 of the Massachusetts Declaration of Rights, as amended by art. 77 of the Amendments to the Constitution.

As the text of art. 19, which was drafted by John Adams with some assistance from his cousin Samuel Adams,[7] along with its illuminating constitutional history, is directly applicable and dispositive of the claims here, we focus on art. 19 first. Because the request for declaratory relief is more open-ended and uses the terminology associated with art. 16 and First Amendment claims, we address art. 16 as well.

1. Standard of review. "We review the allowance of a motion for judgment on the pleadings de novo." Mullins, 488 Mass. at 281. We accept as true "all facts pleaded by the

---

[7] The Adams cousins were two of the three members of the subcommittee at the constitutional convention charged with drafting the Massachusetts Constitution. See S.E. Morison, History of the Constitution of Massachusetts 20 (1917).

nonmoving party" and "draw every reasonable inference in [that party's] favor" to determine whether the "factual allegations plausibly suggest[]" that the nonmoving party is entitled to relief. Id., quoting UBS Fin. Servs., Inc. v. Aliberti, 483 Mass. 396, 405 (2019). This standard applies to our review of the allowance of the motion for judgment on the pleadings with regard to the claim of a violation of the MCRA. Our review of the request for a declaratory judgment, however, differs. The plaintiffs seek a declaration that the town's public comment policy is unconstitutional. We review this as a facial challenge based on the uncontested language of the policy itself. This presents a question of law for the court requiring de novo review. See Commonwealth v. McGhee, 472 Mass. 405, 412 (2015) (facial challenge to statute "present[s] questions of law that we review de novo").

2. Article 19. The text of art. 19 provides: "The people have a right, in an orderly and peaceable manner, to assemble to consult upon the common good; give instructions to their representatives, and to request of the legislative body, by the way of addresses, petitions, or remonstrances, redress of the wrongs done them, and of the grievances they suffer." As written, this provision expressly envisions a politically active and engaged, even aggrieved and angry, populace.

The text of art. 19 thus encompasses the plaintiffs' complaint here.  Barron assembled with others at the public comment session of the board meeting to request redress of the wrongs they claimed had been done to them and the grievances they claimed to have suffered by town official actions, including the town's noncompliance with the open meeting law.

The text of this provision has also not been interpreted to be limited to State representatives or legislative bodies, despite some wording to that effect, but rather has been interpreted to be directed at the people's interaction with government officials more generally, including in particular town officials.  See Kobrin v. Gastfriend, 443 Mass. 327, 333 (2005) (statutory right to petition is coextensive with art. 19 and applies where "a party seeks some redress from the government"); MacKeen v. Canton, 379 Mass. 514, 521-522 (1980) (evaluating whether town meeting procedures were consistent with art. 19); Fuller v. Mayor of Medford, 224 Mass. 176, 178 (1916) (right to assemble under art. 19 "enable[s] the [town] voters to have full and free discussion and consultation upon the merits of candidates for public office and of measures proposed in the public interests").

The provision also has a distinct, identifiable history and a close connection to public participation in town government that is uniquely informative in this case.  As more fully

explained _infra_, art. 19 reflects the lessons and the spirit of the American Revolution. The assembly provision arose out of fierce opposition to governmental authority, and it was designed to protect such opposition, even if it was rude, personal, and disrespectful to public figures, as the colonists eventually were to the king and his representatives in Massachusetts.

Our interpretation of the text, history, and purpose of art. 19 is further informed by the words and actions of Samuel and John Adams, who not only theorized and commented upon the right, but were historic actors well versed in its application during the revolutionary period, particularly in the towns. Both Adams cousins emphasized in their correspondence and their actions the importance of the right to assemble. See Bowie, The Constitutional Right of Self-Government, 130 Yale L.J. 1652, 1727-1728 (2021). Samuel Adams wielded it to great effect in his attempt to "procure a Redress of Grievances" when the British governor of the colony attempted to exercise control over assemblies after the Boston Massacre. _Id_. at 1680, quoting Report of the Committee to Prepare an Answer to Thomas Hutchinson's Speech (July 31, 1770), in 47 Journals of the House of Representatives of Massachusetts 1770-1771, at 63, 69 (1978).

More philosophically, John Adams explained that the right of assembly was a most important principle and institution of self-government, as it allowed "[every] Man, high and low . . .

[to speak his senti]ments of public Affairs." Bowie, supra at 1708, quoting Letter from John Adams to Edmé Jacques Genet (May 28, 1780), in 9 Papers of John Adams 350, 353 (G.L. Lint et al. eds., 1996). Town inhabitants, he wrote, "are invested with . . . the right to assemble, whenever they are summoned by their selectmen, in their town halls, there to deliberate upon the public affairs of the town." Letter from John Adams to the Abbé de Mably (1782), in 5 Works of John Adams 492, 495 (C.F. Adams ed. 1851). "The consequences" of the right of assembly, in Adams's words, were that "the inhabitants . . . acquired . . . the habit of discussing, of deliberating, and of judging of public affairs," and thus, "it was in these assemblies of towns . . . that the sentiments of the people were formed . . . and their resolutions were taken from the beginning to the end of the disputes . . . with Great Britain." Id. Alexis de Tocqueville made a similar point in Democracy in America: "Town-meetings are to liberty what primary schools are to science; they bring it within the people's reach, they teach men how to use and how to enjoy it." 1 A. de Tocqueville, Democracy in America 55 (H. Reeve trans. 1862).

Our own case law interpreting art. 19 confirms Adams's insights regarding the critical role of the right of assembly in the towns in cultivating the spirit and practice of self-

government.  As Justice Rugg wrote in Wheelock v. Lowell, 196

Mass. 220, 227 (1907):

> "It is hard to overestimate the historic significance and
> patriotic influence of the public meetings held in all the
> towns of Massachusetts before and during the Revolution.
> No small part of the capacity for honest and efficient
> local government manifested by the people of this
> Commonwealth has been due to the training of citizens in
> the form of the town meeting.  The jealous care to preserve
> the means for exercising the right of assembling for
> discussion of public topics . . . demonstrates that a vital
> appreciation of the importance of the opportunity to
> exercise the right still survives."

From the beginning, our cases have also emphasized that

"the fullest and freest discussion" seems to be "sanctioned and

encouraged by the admirable passage in the constitution,"

Commonwealth v. Porter, 1 Gray 476, 478, 480 (1854), so long as

the right is exercised in "an orderly and peaceable manner," id.

at 478.  In fact, the drafters of art. 19 tracked the language

of the Pennsylvania Constitution but with the specific addition

of the clause providing that such assembly shall be done "in an

orderly and peaceable manner."  Bowie, 130 Yale L.J. at 1707.

Further clarifying the type of limitations that ensure an

"orderly and peaceable" assembly, our more recent case law has

drawn on well-understood First Amendment principles and provided

for reasonable time, place, and manner restrictions.  As we

stated:

> "States may impose reasonable restrictions on the time,
> place, or manner of protected speech and assembly 'provided
> the restrictions "are justified without reference to the
> content of the regulated speech, that they are narrowly

tailored to serve a significant governmental interest, and
that they leave open ample alternative channels for
communication of the information."'"

Desrosiers, 486 Mass. at 390-391, quoting Boston v. Back Bay

Cultural Ass'n, 418 Mass. 175, 178-179 (1994).

3.  The application of art. 19 to the civility code.  The

question then becomes whether the enforcement of the town's

civility code passes muster under art. 19.  The code provides:

"All remarks and dialogue in public meetings must be
respectful and courteous, free of rude, personal, or
slanderous remarks.  Inappropriate language and/or shouting
will not be tolerated.  Furthermore, no person may offer
comment without permission of the [c]hair, and all persons
shall, at the request of the [c]hair, be silent.  No person
shall disrupt the proceedings of a meeting."

As explained supra, the text, history, and case law

surrounding art. 19 provide for the "fullest and freest"

discussion of public matters, including protection of fierce

criticism of governmental action and actors, so long as that

criticism is done in a peaceable and orderly manner and is

consistent with time, place, and manner restrictions.  Porter, 1

Gray at 478.  See Desrosiers, 486 Mass. at 390-391.  "Peaceable

and orderly" is not the same as "respectful and courteous."

There was nothing respectful or courteous about the public

assemblies of the revolutionary period.  There was also much

that was rude and personal, especially when it was directed at

the representatives of the king and the king himself.[8]  See Bowie, 130 Yale L.J. at 1677 ("in London, a columnist called Boston's town meetings a 'declaration of war' and criticized Boston's leaders for 'working up the populace to such a frenzy of rage'").

Here, the town expressly provided a place for public comment:  the meeting of the board.  The town also set the time, after the conclusion of the regular meeting, as was the town's right.  Barron presented her grievances at the established time and place.[9]  The town nonetheless then sought to control the content of the public comment, which directly implicates and restricts the exercise of the art. 19 right of the people to request "redress of the wrongs done them, and of the grievances

_____

[8] The policy's prohibition on slander raises a different set of questions that we need not resolve here.  In Commonwealth v. Surridge, 265 Mass. 425, 427 (1929), this court expressly carved out slander from protection under art. 19.  However, at least under First Amendment principles, slander directed at public officials requires actual malice.  See Edwards v. Commonwealth, 477 Mass. 254, 263 (2017), S.C., 488 Mass. 555 (2021), citing New York Times Co. v. Sullivan, 376 U.S. 254, 279-280 (1964).

[9] A manner regulation restricts the way in which a speaker communicates, i.e., the medium of communication or aspects of that medium like the size of signs or the volume of audio.  See Regan v. Time, Inc., 468 U.S. 641, 656 (1984) (plurality opinion) (manner regulations include "size and color limitations" on photographs, "decibel level restrictions," and "size and height limitations on outdoor signs"); Back Bay Cultural Ass'n, 418 Mass. at 183 (ban on "forms of entertainment" that "create the type of noise the city legitimately seeks to eliminate" would be permissible).  We are not presented with disputed manner restrictions in the instant case.

they suffer."[10]   The content sought to be prohibited --

discourteous, rude, disrespectful, or personal speech about

government officials and governmental actions -- is clearly

protected by art. 19, and thus the prohibition is impermissible.

In sum, the town's civility code is contradicted by the letter

and purpose of art. 19.[11]

---

[10] This is not a case in which the public meeting was
limited to a particular item or items.  Although that would be
content based, in order to function efficiently, towns must be
able to hold public meetings limited to a particular subject
without violating art. 19, so long as the town provides other
opportunities to exercise this right, as it did in the instant
case.  Cf. Madison Joint Sch. Dist. No. 8 v. Wisconsin
Employment Relations Comm'n, 429 U.S. 167, 175 n.8 (1976)
("Plainly, public bodies may confine their meetings to specified
subject matter and may hold nonpublic sessions to transact
business").

[11] Given the detailed and emphatic text, history, and case
law, there is no reason to conclude that the State
constitutional right protected by art. 19 would be any less
protective than the right of assembly protected by the First
Amendment.  Throughout most of its history, the right of
assembly clause in the First Amendment, although not interpreted
as being "identical" to the right of free speech, has not been
given much independent significance.  See National Ass'n for the
Advancement of Colored People v. Claiborne Hardware Co., 458
U.S. 886, 911-912 (1982); Thomas v. Collins, 323 U.S. 516, 530
(1945) (rights to freedom of speech, assembly, and press,
"though not identical, are inseparable").  See also Blackhawk,
Lobbying and the Petition Clause, 68 Stan. L. Rev. 1131 (2016);
Bowie, 130 Yale L.J. at 1655; El-Haj, The Neglected Right of
Assembly, 56 UCLA L. Rev. 543 (2009); Inazu, The Forgotten
Freedom of Assembly, 84 Tul. L. Rev. 565, 570 (2010).  Although
the Supreme Court's more recent decision in Duryea v. Guarneri,
564 U.S. 379, 394 (2011), somewhat reinvigorated the provision,
Blackhawk, supra at 1181, the vigor of art. 19 is unquestionable
as reflected in its text, history, and case law.  Indeed, the
clear thrust of that text, history, and case law interpreting
art. 19 compels the conclusion that the town's civility code is
unconstitutional.

4.  <u>Article 16</u>.  Assuming that the request for declaratory relief also includes a claim based on art. 16, as well as art. 19, we also conclude that art. 16 is violated.

In their request for declaratory relief, the plaintiffs state:

> "The [c]ourt should declare that the [d]efendants may not
> regulate protected speech during any time period designated
> for speech by the public based on the content of the
> message of the speaker, the view point of the speaker, or
> their desire to avoid criticism, ensure 'proper decorum',
> or avoid 'personal' or derogatory or even defamatory
> statements, unless such regulation is the least restrictive
> means necessary to achieve a compelling government
> interest."

Our cases interpreting art. 16 clearly support this request for relief.  They also do so without any need to survey, as the parties do, the contested Federal case law distinguishing limited and designated public forums and the different standards of review applicable to these forums under the First Amendment. As this court expressly stated in <u>Walker</u> v. <u>Georgetown Hous. Auth.</u>, 424 Mass. 671, 675 (1997):  "We need not decide whether we would find the [United States] Supreme Court's public, nonpublic, and limited public forum classifications instructive in resolving free speech rights under our Declaration of Rights" in the instant case.  Indeed, "we need not enter that fray because, under our Declaration of Rights, the applicable standard for content-based restrictions on political speech is clearly strict scrutiny."  <u>Commonwealth</u> v. <u>Lucas</u>, 472 Mass. 387,

397 (2015).    See <u>Massachusetts Coalition for the Homeless</u> v.

<u>Fall River</u>, 486 Mass. 437, 441-442 (2020) (holding that strict

scrutiny applies to content-based regulation of protected

speech); <u>Bachrach</u> v. <u>Secretary of the Commonwealth</u>, 382 Mass.

268, 276 (1981) ("As a substantial restriction of political

expression and association . . . the legislation at bar should

attract 'strict scrutiny'").[12]

There is no question that this civility code is directed at

political speech, as it regulates speech in a public comment

session of a meeting of the board, and that it is content based,

as it requires us to examine what was said.    See <u>Opinion of the</u>

<u>Justices</u>, 436 Mass. 1201, 1206 (2002) ("if the applicability of

---

[12] As we apply strict scrutiny here, the protection provided
by the State Constitution is at least as great if not greater
than the protection provided by the First Amendment for content-
based governmental restrictions.    As noted <u>supra</u>, we are not
confronted with a public meeting limited to a particular item or
items.    We recognize that even though a public meeting limited
to a particular purpose may require a content-based restriction
on comments, government must be able to hold such meetings to
function efficiently.    Whether the government's right to hold
such meetings satisfies strict scrutiny or some lesser standard
under art. 16, we need not decide.    Cf. <u>Rowe</u> v. <u>Cocoa</u>, 358 F.3d
800, 803 (11th Cir. 2004) ("There is a significant governmental
interest in conducting orderly, efficient meetings of public
bodies," which may be done via "confin[ing] their meetings to
specified subject matter"); <u>White</u> v. <u>Norwalk</u>, 900 F.2d 1421,
1425 (9th Cir. 1990) ("the Council does not violate the first
amendment when it restricts public speakers to the subject at
hand"); Smith <u>vs</u>. Middletown, U.S. Dist. Ct., No. 3:09-CV-1431
(D. Conn. Sept. 1, 2011), aff'd sub nom. <u>Smith</u> v. <u>Santangelo</u>,
518 Fed. Appx. 16 (2d Cir. 2013) ("The restriction of public
comment to items on the agenda is also reasonable because it
. . . facilitate[s] the official business of the Council").

the bill's requirements can only be determined by reviewing the contents of the proposed expression, the bill is a content-based regulation of speech"). As such, it must withstand strict scrutiny, which means it must be "both 'necessary to serve a compelling [S]tate interest and . . . narrowly drawn to achieve that end.'" Lucas, 472 Mass. at 398, quoting Opinion of the Justices, supra. It is neither. Although civility can and should be encouraged in political discourse, it cannot be required. In this country, we have never concluded that there is a compelling need to mandate that political discourse with those with whom we strongly disagree be courteous and respectful. Rather, we have concluded that political speech must remain "uninhibited, robust, and wide-open." Van Liew v. Stansfield, 474 Mass. 31, 39 (2016), quoting New York Times Co. v. Sullivan, 374 U.S. 254, 270 (1964). This civility code is also drafted with an extraordinarily broad brush. It is certainly not narrowly tailored.

Finally, the policy's requirement that the speech directed at government officials "be respectful and courteous, [and] free of rude . . . remarks" appears to cross the line into viewpoint discrimination: allowing lavish praise but disallowing harsh criticism of government officials.[13] As the Supreme Court has

---

[13] At the same time, as between members of the public taking opposite positions, a requirement that the comments be respectful and courteous appears not to be viewpoint based, but

explained, "[w]hen the government targets not subject matter, but particular views taken by speakers on a subject, the violation of the First Amendment is all the more blatant." Rosenberger v. Rector & Visitors of Univ. of Va., 515 U.S. 819, 829 (1995). See Shurtleff v. Boston, 142 S. Ct. 1583, 1587 (2022) ("When the government encourages diverse expression -- say, by creating a forum for debate -- the [right to free speech] prevents it from discriminating against speakers based on their viewpoint"). Although we have not been required to precisely define what constitutes viewpoint discrimination in our case law, art. 16, like the First Amendment, certainly does not permit viewpoint discrimination. See Roman v. Trustees of Tufts College, 461 Mass. 707, 716-717 (2012); Opinion of the Justices, 430 Mass. 1205, 1209 (2000).[14]

A provision "that public officials [can] be praised but not condemned" is "the essence of viewpoint discrimination." Matal v. Tam, 582 U.S. 218, 249 (2017) (Kennedy, J., concurring). Speech that politely praises public officials or their actions is allowed by the policy, but speech that rudely or

---

rather only content based. An example would be if a town official told both sides debating a tax increase to fully express their views but to do so courteously. Although still impermissible, because it is content based, the restriction would not be viewpoint based.

[14] The same is true for art. 19.

disrespectfully criticizes public officials or their actions is not. This constitutes viewpoint discrimination.

In sum, this civility code is unconstitutional under art. 16 as well as art. 19.

5. Overbreadth, vagueness, and permissible restrictions. In the instant case, we have not been asked, nor should we attempt on our own, to separate the unconstitutional from the constitutional aspects of the town's civility code. We conclude that it is so overbroad, so vague, and so subject to manipulation on its face that it is not salvageable or severable. See Massachusetts Coalition for the Homeless, 486 Mass. at 447 (statute declared facially invalid under art. 16 in its entirety because we discerned an "unacceptable risk of a chilling effect"); Lucas, 472 Mass. at 404 (statute declared unconstitutional in its entirely because "even under a narrow construction, there is a genuine risk that the operation of [statute] will cast an unacceptable chill on core political speech").

This is not to say that restrictions cannot be imposed on public comment sessions consistent with arts. 16 and 19. Reasonable time, place, and manner restrictions could include designating when and where a public comment session may occur, how long it might last, the time limits for each person speaking

during the public comment session, and rules preventing speakers from disrupting others and removing those who do.

6. <u>MCRA claim</u>. We also have no difficulty concluding that the dismissal of the MCRA claim should be reversed. Taking the facts in the light most favorable to the plaintiffs, Kolenda "interfere[d]" with Barron's clearly established constitutional right under arts. 19 and 16 via "threats, intimidation or coercion." G. L. c. 12, § 11H. As such, there was a violation of the MCRA and no qualified immunity.

"To establish a claim under the [MCRA], 'a plaintiff must prove that (1) the exercise or enjoyment of some constitutional or statutory right; (2) has been interfered with, or attempted to be interfered with; and (3) such interference was by threats, intimidation, or coercion.'" <u>Glovsky</u> v. <u>Roche Bros. Supermkts., Inc.</u>, 469 Mass. 752, 762 (2014), quoting <u>Currier</u> v. <u>National Bd. of Med. Examiners</u>, 462 Mass. 1, 12 (2012). In the instant case, the video recording shows that, first, Barron complained about the open meeting law violations; then, Kolenda accused her of slander and said, "[W]e're gonna go ahead and stop the public comment session now"; next, Barron said, "[Y]ou need to stop being a Hitler"; and finally, Kolenda ended the meeting and the audio stopped. Subsequently, Kolenda stood up and started yelling and aggressively pointing at Barron. The plaintiffs' complaint alleges that Kolenda shouted, "You're disgusting," and

threatened to have her "escorted out" of the meeting.  The video
recording does not show Barron after the end of the audio
portion.

Taking the facts, including the video recording, in the
light most favorable to the plaintiffs, Barron exercised her
constitutional right under arts. 19 and 16 to address the
meeting of the board and complain about the open meeting law
violations.  Her comparison between Kolenda and Hitler was, at
least in the light most favorable to the plaintiffs, simply
hyperbole, describing Kolenda as behaving in a dictatorial
manner, that is, domineering or authoritarian.  Although a
comparison to Hitler is certainly rude and insulting, it is
still speech protected by art. 16.[15]

---

[15] We note that personally insulting comments may rise to
the level of fighting words, that is, "face-to-face personal
insults that are so personally abusive that they are plainly
likely to provoke a violent reaction and cause a breach of the
peace," which are not protected speech.  O'Brien v. Borowski,
461 Mass. 415, 423 (2012).  See also Cohen v. California, 403
U.S. 15, 20 (1971) (fighting words are "personally abusive
epithets which, when addressed to the ordinary citizen, are, as
a matter of common knowledge, inherently likely to provoke
violent reaction").  We have also explained that "the fighting
words exception [to free speech] is 'an extremely narrow one.'"
O'Brien, supra, quoting Johnson v. Campbell, 332 F.3d 199, 212
(3d Cir. 2003).  We further emphasize that elected officials are
expected to be able to respond to insulting comments about their
job performance without violence.  See Commonwealth v. Bigelow,
475 Mass. 554, 562 (2016) ("personal insults and allegations
concerning [selectman's] alleged criminal past" were
"constitutionally protected political speech" because "central
thrust is criticism of him as a selectman").  Although not
presented in the instant case, we recognize that fighting words
from one public speaker may trigger a disturbance from another

In addition, the plaintiffs' allegations plausibly suggest that Barron's rights were interfered with via threats, intimidation, or coercion.  Kolenda's response is not fully captured by the video recording, but, accepting the plaintiffs' account as true, Kolenda told Barron to stop speaking, started screaming at her, and threatened to have her removed from the meeting in response to her protected speech.  If this is proved at trial, she could establish a violation of the MCRA.  See Batchelder v. Allied Stores Corp., 393 Mass. 819, 823 (1985) ("sufficient intimidation or coercion" where "security officer ordered [plaintiff] to stop soliciting and distributing his political handbills"); Sarvis v. Boston Safe Deposit & Trust Co., 47 Mass. App. Ct. 86, 93 (1999) (third element of MCRA satisfied where "defendants attempted to interfere with the plaintiffs' right to a summary process hearing by threatening them with arrest and then bringing about their arrests").

On the facts alleged, Kolenda is also not entitled to qualified immunity.  As we have explained:  "[G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have

member of the public, which may require action by government officials.

known." LaChance v. Commissioner of Correction, 463 Mass. 767, 777 (2012), S.C., 475 Mass. 757 (2016), quoting Rodriques v. Furtado, 410 Mass. 878, 882 (1991). More specifically, "[a] right is only clearly established if, at the time of the alleged violation, 'the contours of the right allegedly violated [were] sufficiently definite so that a reasonable official would appreciate that the conduct in question was unlawful.'" LaChance, supra, quoting Longval v. Commissioner of Correction, 448 Mass. 412, 419 (2007). Nevertheless, "it is not necessary for the courts to have previously considered a particular situation identical to the one faced by the government official." Caron v. Silvia, 32 Mass. App. Ct. 271, 273 (1992). "It is enough, rather, that there existed case law sufficient to clearly establish that, if a court were presented with such a situation, the court would find that the plaintiff's rights were violated." Id., quoting Hall v. Ochs, 817 F.2d 920, 925 (1st Cir. 1987). In the instant case, the contours of the rights are sufficiently clear, and a reasonable public official would understand that his response to the exercise of those rights was unlawful.

As discussed supra, the "full and free" discussion in town meetings protected by art. 19 has a long and distinguished history in Massachusetts. Fuller, 224 Mass. at 178. It is also well established that restrictions on the content of political

speech must be "necessary to serve a compelling [S]tate interest and . . . narrowly drawn to achieve that end" to satisfy the requirements of art. 16, Opinion of the Justices, 436 Mass. at 1206, and that viewpoint discrimination is absolutely prohibited, Rosenberger, 515 U.S. at 829.

At a public comment session in a meeting of the board, a resident of the town thus clearly has the right to accurately complain about violations of law committed by town officials and object to other town actions, including its spending practices, and to express her views vehemently, critically, and personally to the government officials involved.  Such a right is clearly protected by art. 19 as well as art. 16 for the reasons discussed supra.  When a government official responds to a resident's exercise of those rights by accusing her of slandering the board, screaming at her, and threatening her physical removal, it should be clear to him that his conduct is unlawful.  Thus, there is no basis for qualified immunity.

Conclusion.  The order of judgment on the pleadings is reversed, and the case is remanded for further proceedings consistent with this opinion, including entry of a judgment declaring that the town's public comment policy is unconstitutional.

So ordered.

From:     ECFnotice@mad.uscourts.gov [ECFnotice@mad.uscourts.gov]
Sent:     2/28/2022 12:11:55 PM
To:       CourtCopy@mad.uscourts.gov [CourtCopy@mad.uscourts.gov]
Subject: Activity in Case 1:20-cv-10139-LTS Doe et al v. Holly et al Order on Motion for Summary Judgment

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

### United States District Court

### District of Massachusetts

**Notice of Electronic Filing**

The following transaction was entered on 2/28/2022 at 11:11 AM EST and filed on 2/28/2022
**Case Name:**      Doe et al v. Holly et al
**Case Number:**   1:20-cv-10139-LTS
**Filer:**
**Document Number:** 78

**Docket Text:**
**District Judge Leo T. Sorokin: ORDER entered. ORDER ON MOTIONS FOR SUMMARY JUDGMENT (DOC. NOS. 56, 58) AND MOTION TO STRIKE (DOC. NO. 77)**

**For the foregoing reasons, the Court ALLOWS Maynard's Motion for Summary Judgment (Doc. No. 56) and the individual Defendants' Motion for Summary Judgment (Doc. No. 58) resulting in judgment in favor of all Defendants on all claims except as to Plaintiffs' claim against Maynard for negligence as to the investigations which is REMANDED WITHOUT PREJUDICE to the Commonwealth of Massachusetts Superior Court for lack of subject matter jurisdiction. Additionally, Defendants' Motion to Strike (Doc. No. 77) IS ALLOWED. (Dore, Samantha)**

**1:20-cv-10139-LTS Notice has been electronically mailed to:**

John J. Cloherty, III    jcloherty@piercedavis.com, shillman@piercedavis.com

Steven R. Ballard    sballard@stevenballard.com

**1:20-cv-10139-LTS Notice will not be electronically mailed to:**

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** yes
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1029851931 [Date=2/28/2022] [FileNumber=9718182-0
] [baafe690ec5656a9205072d053ed9c402ce11e58a29706ad496792bb3f9418ad44f
c4aa733aa57bdcb76e5051f3622c6839ba60e56ad4ae97631cb121bf47469]]

From:    ECFnotice@mad.uscourts.gov [ECFnotice@mad.uscourts.gov]
Sent:    2/28/2022 12:13:32 PM
To:    CourtCopy@mad.uscourts.gov [CourtCopy@mad.uscourts.gov]
Subject: Activity in Case 1:20-cv-10139-LTS Doe et al v. Holly et al Judgment

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

### United States District Court

### District of Massachusetts

## Notice of Electronic Filing

The following transaction was entered on 2/28/2022 at 11:13 AM EST and filed on 2/28/2022

**Case Name:**    Doe et al v. Holly et al
**Case Number:**    1:20-cv-10139-LTS
**Filer:**
**Document Number:** 79

**Docket Text:**
**District Judge Leo T. Sorokin: ORDER entered. JUDGMENT (Dore, Samantha)**

**1:20-cv-10139-LTS Notice has been electronically mailed to:**

John J. Cloherty, III    jcloherty@piercedavis.com, shillman@piercedavis.com

Steven R. Ballard    sballard@stevenballard.com

**1:20-cv-10139-LTS Notice will not be electronically mailed to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**yes
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1029851931 [Date=2/28/2022] [FileNumber=9718195-0] [403e9c9d161169d9e5b373742ec3599dcd63ea29ca21975b6c30838fb8cdb9f3b33 9c9fa2188d9facddfc6bd621544619f8c628bcf7d8820570758ee3265fc73]]

From:       ECFnotice@mad.uscourts.gov [ECFnotice@mad.uscourts.gov]
Sent:       2/28/2022 1:02:34 PM
To:         CourtCopy@mad.uscourts.gov [CourtCopy@mad.uscourts.gov]
Subject: Activity in Case 1:20-cv-10139-LTS Doe et al v. Holly et al Case file sent

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

### United States District Court

### District of Massachusetts

## Notice of Electronic Filing

The following transaction was entered on 2/28/2022 at 12:02 PM EST and filed on 2/28/2022
**Case Name:**       Doe et al v. Holly et al
**Case Number:**    1:20-cv-10139-LTS
**Filer:**
**Document Number:** 80

**Docket Text:**
**Case file sent to Middlesex County Superior Courthouse. (Dore, Samantha)**


**1:20-cv-10139-LTS Notice has been electronically mailed to:**

John J. Cloherty, III     jcloherty@piercedavis.com, shillman@piercedavis.com

Steven R. Ballard     sballard@stevenballard.com

**1:20-cv-10139-LTS Notice will not be electronically mailed to:**

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** yes
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1029851931 [Date=2/28/2022] [FileNumber=9718308-0
] [950f10e50567e9971e0b9752e153e668d610a6d5f072272338eda1f00af08b347f5
4cdb656d90753a9ae8d42f3e493c2d67d7192731ae1e92d6c4efd3323cc34]]

From:     ECFnotice@mad.uscourts.gov [ECFnotice@mad.uscourts.gov]
Sent:     3/30/2022 11:56:19 AM
To:       CourtCopy@mad.uscourts.gov [CourtCopy@mad.uscourts.gov]
Subject:  Activity in Case 1:20-cv-10139-LTS Doe et al v. Holly et al Notice of Appeal

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

### United States District Court

### District of Massachusetts

## Notice of Electronic Filing

The following transaction was entered by Ballard, Steven on 3/30/2022 at 11:56 AM EDT and filed on 3/30/2022

| | |
|---|---|
| **Case Name:** | Doe et al v. Holly et al |
| **Case Number:** | 1:20-cv-10139-LTS |
| **Filer:** | Doe Child |
| | Jane Doe |
| | John Doe |

**WARNING: CASE CLOSED on 02/28/2022**

**Document Number:** 81

**Docket Text:**
**NOTICE OF APPEAL as to [79] Judgment, [78] Order on Motion for Summary Judgment,,,,, by Doe Child, Jane Doe, John Doe Filing fee: $ 505, receipt number AMADC-9250107 Fee Status: Not Exempt. NOTICE TO COUNSEL: A Transcript Report/Order Form, which can be downloaded from the First Circuit Court of Appeals web site at http://www.ca1.uscourts.gov MUST be completed and submitted to the Court of Appeals. Counsel shall register for a First Circuit CM/ECF Appellate Filer Account at http://pacer.psc.uscourts.gov/cmecf. Counsel shall also review the First Circuit requirements for electronic filing by visiting the CM/ECF Information section at http://www.ca1.uscourts.gov/cmecf. US District Court Clerk to deliver official record to Court of Appeals by 4/19/2022. (Ballard, Steven)**

**1:20-cv-10139-LTS Notice has been electronically mailed to:**

**John J. Cloherty , III     jcloherty@piercedavis.com, shillman@piercedavis.com**

**Steven R. Ballard     sballard@stevenballard.com**

**1:20-cv-10139-LTS Notice will not be electronically mailed to:**

**The following document(s) are associated with this transaction:**

**Document description:Main Document**
**Original filename:yes**

**Electronic document Stamp:**
**[STAMP dcecfStamp_ID=1029851931 [Date=3/30/2022] [FileNumber=9760881-0**
**] [0c9cc2ac45af45cd6de21d356bef656a582787d48538aec04e347778444eef25b48**
**7f10b13e227e9cde13dc4e188f5fe9475fd20e1bd4f8566e07eee1a5438c4]]**

# Docket Activity Report

## United States District Court -- District of Massachusetts

## Report Filed Period: 1/1/2021 - 5/2/2023

| Case Number/Title | Dates | Category/Event | Docketed by | Notes |
|---|---|---|---|---|
| [1:20-cv-10139-LTS](#)<br>[Doe et al v. Holly et al](#)<br>**CASE CLOSED on 02/28/2022** | *Entered:* 03/26/2021 16:09:15<br>*Filed:* 03/26/2021 | *Category:* motion<br>*Event:* Compel<br>*Document:* [46](#) 🌐 | J. Cloherty<br>*Type:* aty | *Cause:* 42:1983 Civil Rights Act<br>*NOS:* Civil Rights: Other<br>*Office:* Boston<br>*Presider:* Leo T. Sorokin<br>*Jury demand:* Both<br>*Case Flags:* APPEAL |
| | *Entered:* 03/29/2021 10:01:34<br>*Filed:* 03/29/2021 | *Category:* order<br>*Event:* Order ~Util - Set Motion and R&R Deadlines/Hearings<br>*Document:* 47 🌐 | M. Montes<br>*Type:* crt | |
| | *Entered:* 04/06/2021 15:59:07<br>*Filed:* 04/06/2021 | *Category:* respm<br>*Event:* Opposition to Motion<br>*Document:* [48](#) 🌐 | S. Ballard<br>*Type:* aty | |
| | *Entered:* 04/08/2021 10:46:03<br>*Filed:* 04/07/2021 | *Category:* minutes<br>*Event:* Status Conference ~Util - Set Deadlines ~Util - Set Motion and R&R Deadlines/Hearings<br>*Document:* 49 🌐 | M. Simeone<br>*Type:* crt | |
| | *Entered:* 04/09/2021 12:07:08<br>*Filed:* 04/09/2021 | *Category:* utility<br>*Event:* Set/Reset Deadlines Set/Reset Motion and R&R Deadlines/Hearings<br>*Document:* 50 🌐 | M. Simeone<br>*Type:* crt | |
| | *Entered:* 04/16/2021 16:48:00<br>*Filed:* 04/16/2021 | *Category:* motion<br>*Event:* Discovery<br>*Document:* [51](#) 🌐 | S. Ballard<br>*Type:* aty | |
| | *Entered:* 04/16/2021 16:53:20<br>*Filed:* 04/16/2021 | *Category:* motion<br>*Event:* Amend<br>*Document:* [52](#) 🌐 | S. Ballard<br>*Type:* aty | |

| | Entered: 04/23/2021 17:32:52 Filed: 04/23/2021 | Category: respm Event: Opposition to Motion Document: 53 ⊕ | J. Cloherty Type: aty | |
|---|---|---|---|---|
| | Entered: 04/29/2021 15:03:43 Filed: 04/29/2021 | Category: order Event: Order on Motion to Compel Order on Motion for Discovery Order on Motion to Amend Document: 54 ⊕ | M. Montes Type: crt | |
| | Entered: 04/29/2021 15:07:20 Filed: 04/29/2021 | Category: utility Event: Set/Reset Deadlines Set/Reset Motion and R&R Deadlines/Hearings Document: 55 ⊕ | M. Montes Type: crt | |
| | Entered: 07/30/2021 22:48:04 Filed: 07/30/2021 | Category: motion Event: Summary Judgment Document: 56 ⊕ | J. Cloherty Type: aty | |
| | Entered: 07/30/2021 22:49:21 Filed: 07/30/2021 | Category: respm Event: Memorandum in Support of Motion Document: 57 ⊕ | J. Cloherty Type: aty | |
| | Entered: 07/30/2021 22:51:00 Filed: 07/30/2021 | Category: motion Event: Summary Judgment Document: 58 ⊕ | J. Cloherty Type: aty | |
| | Entered: 07/30/2021 22:52:09 Filed: 07/30/2021 | Category: respm Event: Memorandum in Support of Motion Document: 59 ⊕ | J. Cloherty Type: aty | |
| | Entered: 07/30/2021 23:06:13 Filed: 07/30/2021 | Category: respm Event: Statement of Material Facts L.R. 56.1 Document: 60 ⊕ | J. Cloherty Type: aty | |
| | Entered: 08/30/2021 16:45:37 Filed: 08/30/2021 | Category: motion Event: Extension of Time to File Response/Reply Document: 61 ⊕ | S. Ballard Type: aty | |
| | Entered: 08/31/2021 09:24:05 Filed: 08/31/2021 | Category: order Event: Order on Motion for Extension of Time to File Response/Reply Document: 62 ⊕ | S. Dore Type: crt | |

| | Entered:<br>09/13/2021<br>23:05:00<br>Filed:<br>09/13/2021 | *Category:* motion<br>*Event:* Extension of Time to File<br>Response/Reply<br>*Document:* 63 🌐 | S. Ballard<br>*Type:* aty | |
| | Entered:<br>09/14/2021<br>09:16:45<br>Filed:<br>09/14/2021 | *Category:* order<br>*Event:* Order on Motion for Extension of<br>Time to File Response/Reply<br>*Document:* 64 🌐 | S. Dore<br>*Type:* crt | |
| | Entered:<br>09/27/2021<br>17:24:59<br>Filed:<br>09/27/2021 | *Category:* motion<br>*Event:* Extension of Time<br>*Document:* 65 🌐 | S. Ballard<br>*Type:* aty | |
| | Entered:<br>09/28/2021<br>09:50:16<br>Filed:<br>09/28/2021 | *Category:* order<br>*Event:* Order on Motion for Extension of<br>Time<br>*Document:* 66 🌐 | S. Dore<br>*Type:* crt | |
| | Entered:<br>09/28/2021<br>09:52:55<br>Filed:<br>09/28/2021 | *Category:* utility<br>*Event:* Set/Reset Motion and R&R<br>Deadlines/Hearings<br>*Document:* 67 🌐 | S. Dore<br>*Type:* crt | |
| | Entered:<br>10/12/2021<br>01:08:47<br>Filed:<br>10/12/2021 | *Category:* respm<br>*Event:* Opposition to Motion<br>*Document:* 68 🌐 | S. Ballard<br>*Type:* aty | |
| | Entered:<br>10/12/2021<br>01:10:42<br>Filed:<br>10/12/2021 | *Category:* respm<br>*Event:* Memorandum in Opposition to<br>Motion<br>*Document:* 69 🌐 | S. Ballard<br>*Type:* aty | |
| | Entered:<br>10/12/2021<br>07:56:33<br>Filed:<br>10/12/2021 | *Category:* respm<br>*Event:* Statement of Material Facts L.R. 56.1<br>*Document:* 70 🌐 | S. Ballard<br>*Type:* aty | |
| | Entered:<br>10/12/2021<br>08:04:12<br>Filed:<br>10/12/2021 | *Category:* respm<br>*Event:* Statement of Material Facts L.R. 56.1<br>*Document:* 71 🌐 | S. Ballard<br>*Type:* aty | |
| | Entered:<br>10/12/2021<br>08:06:02<br>Filed:<br>10/12/2021 | *Category:* respm<br>*Event:* Statement of Material Facts L.R. 56.1<br>*Document:* 72 🌐 | S. Ballard<br>*Type:* aty | |

| | Entered:<br>10/12/2021<br>08:07:20<br>Filed:<br>10/12/2021 | Category: respm<br>Event: Statement of Material Facts L.R. 56.1<br>Document: 73 🌐 | S. Ballard<br>Type: aty | |
|---|---|---|---|---|
| | Entered:<br>10/12/2021<br>08:08:31<br>Filed:<br>10/12/2021 | Category: respm<br>Event: Statement of Material Facts L.R. 56.1<br>Document: 74 🌐 | S. Ballard<br>Type: aty | |
| | Entered:<br>10/12/2021<br>20:15:56<br>Filed:<br>10/12/2021 | Category: respm<br>Event: Statement of Material Facts L.R. 56.1<br>Document: 75 🌐 | S. Ballard<br>Type: aty | |
| | Entered:<br>10/25/2021<br>15:46:29<br>Filed:<br>10/25/2021 | Category: respoth<br>Event: Response - not related to a motion<br>Document: 76 🌐 | J. Cloherty<br>Type: aty | |
| | Entered:<br>10/25/2021<br>15:49:39<br>Filed:<br>10/25/2021 | Category: respm<br>Event: Reply to Response to Motion<br>Document: 77 🌐 | J. Cloherty<br>Type: aty | |
| | Entered:<br>02/28/2022<br>11:11:55<br>Filed:<br>02/25/2022 | Category: order<br>Event: Order on Motion for Summary Judgment<br>Document: 78 🌐 | S. Dore<br>Type: crt | |
| | Entered:<br>02/28/2022<br>11:13:31<br>Filed:<br>02/25/2022 | Category: order<br>Event: Judgment<br>Document: 79 🌐 | S. Dore<br>Type: crt | |
| | Entered:<br>02/28/2022<br>12:02:33<br>Filed:<br>02/28/2022 | Category: misc<br>Event: Case file sent<br>Document: 80 🌐 | S. Dore<br>Type: crt | |
| | Entered:<br>03/30/2022<br>11:56:19<br>Filed:<br>03/30/2022 | Category: appeal<br>Event: Notice of Appeal<br>Document: 81 🌐 | S. Ballard<br>Type: aty | |
| | Entered:<br>03/30/2022<br>13:14:16<br>Filed:<br>03/30/2022 | Category: appeal<br>Event: Abbreviated Electronic Appeal Record Sent to USCA<br>Document: 82 🌐 | M. Paine<br>Type: crt | |

| | Entered: 03/30/2022 14:08:12 Filed: 03/30/2022 | Category: appeal Event: Appeal Transcript Order Form Document: 83 ⬤ | S. Ballard Type: aty | |
|---|---|---|---|---|
| | Entered: 03/31/2022 09:36:31 Filed: 03/31/2022 | Category: appeal Event: USCA Case Number Document: 84 ⬤ | M. Paine Type: crt | |
| | Entered: 07/13/2022 18:12:42 Filed: 07/13/2022 | Category: appeal Event: Transcript - Appeal Document: 85 ⬤ | K. Coppola Type: crt | |
| | Entered: 07/13/2022 18:14:55 Filed: 07/13/2022 | Category: appeal Event: Transcript - Appeal Document: 86 ⬤ | K. Coppola Type: crt | |
| | Entered: 07/13/2022 18:15:25 Filed: 07/13/2022 | Category: notice Event: Notice of Filing of Official Transcript Document: 87 ⬤ | K. Coppola Type: crt | |
| | Entered: 07/25/2022 08:57:35 Filed: 07/20/2022 | Category: appeal Event: Transcript - Appeal Document: 88 ⬤ | K. Coppola Type: crt | |
| | Entered: 07/25/2022 08:58:03 Filed: 07/20/2022 | Category: notice Event: Notice of Filing of Official Transcript Document: 89 ⬤ | K. Coppola Type: crt | |

## Selection Criteria for Report

| | |
|---|---|
| **Case number** | 1:20-cv-10139 |
| **Only cases to which I am linked** | Yes |
| **Filed Date** | 1/1/2021 - 5/2/2023 |
| **Entered Date** | All |
| **Office** | Boston |
| **Nature of Suit** | All |
| **Cause** | All |
| **Case type** | All |

| Case flags | All |
|---|---|
| Open Cases | No |
| Closed Cases | No |
| Event Category | All |
| Docket Text | summary |
| Sort by | case number |
| **Total Number of Docket Entries: 44** ||

| PACER Service Center |||||
|---|---|---|---|---|
| **Transaction Receipt** |||||
| 05/02/2023 16:46:17 |||||
| **PACER Login:** | stevenrballard19 | **Client Code:** | | |
| **Description:** | Docket Activity Report | **Search Criteria:** | 1:20-cv-10139-LTS Office: 1 Filed From: 1/1/2021 Filed To: 5/2/2023 | |
| **Billable Pages:** | 6 | **Cost:** | 0.60 | |